IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KRISTINE SCHROEDER and
GEORGE SCHROEDER,                                   OPINION and ORDER

                        Plaintiffs,

                                                         08-cv-70-bbc

            v.

DET. SGT. FRANK TOMLANOVICH,
in his individual capacity, and
VILAS COUNTY,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Two very different accounts of a business venture gone sour are at the heart of this

civil rights case brought under the Fourth Amendment (via 42 U.S.C. § 1983) and state law.

In 2005, plaintiffs Kristine and George Schroeder formed a partnership with Gina and

Robert Ozelie called Design Trucks, involving the sale and installation of truck accessories.

In 2006, plaintiffs contacted the Vilas County sheriff's department about their suspicions

that the Ozelies were embezzling from the company.  Defendant Frank Tomlanovich, a

detective at the sheriff's department, concluded that plaintiffs had not provided enough

evidence to support a criminal prosecution.  (Because the parties agree that Vilas County is

1

named as a defendant for the sole purpose of indemnification, I will refer to Frank Tomlanovich simply as "defendant" for the remainder of the opinion.) The following month the Ozelies closed the business.

In 2007, the Ozelies provided defendant a different story, accusing plaintiffs of artificially inflating the company's sales records to hide plaintiffs' own embezzlement scheme. This time defendant sought and obtained a warrant to search plaintiffs' home, relying on the account provided by the Ozelies. The affidavit in support of the search warrant omitted plaintiffs' allegations from the previous year. In executing the warrant, defendant took several computers and associated items, credit cards and numerous documents from plaintiff's home. Although plaintiffs have not been charged with a crime, none of their belongings have been returned to them.

Plaintiffs are asserting four claims against defendant: (1) he omitted facts from the search warrant that would have defeated probable cause had they been included; (2) he seized items that were not covered by the search warrant; (3) he has failed to return any of the seized items within a reasonable time; and (4) he tortiously interfered with plaintiffs' contractual relationships. Defendant has moved for summary judgment on each claim except his alleged failure to return the property. (In his reply brief, defendant argues that he "reasonably construed" this claim as a failure to provide plaintiffs with a predeprivation hearing, which is the claim on which he requested summary judgment but which plaintiffs

are not asserting.  Dkt. #32, at 1-2; Dkt. #26, at 4 n.1.  Regardless whether defendant's misinterpretation of the complaint was reasonable, I cannot grant summary judgment to him on this claim because he did not include any facts or argument in his initial submissions about the reasonableness of his failure to return plaintiff's property.)

Although I agree with plaintiffs that probable cause could have been defeated if defendant had included information showing that the Ozelies' account was contradicted by plaintiffs' previous report, I must grant summary judgment to defendant on plaintiffs' first two claims because plaintiffs have failed to show that the law was clearly established that defendant's actions violated the Fourth Amendment.  However, I must deny defendant's motion with respect to the state law claim of tortious interference with a contract because defendant's only argument is that his search of plaintiffs' house was lawful, an argument I have rejected in the context of plaintiff's Fourth Amendment claim.  Accordingly, the case will proceed to trial on plaintiffs' state law claim and their claim under the Fourth Amendment that defendant has failed to return seized property within a reasonable time.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

### UNDISPUTED FACTS

A.  Plaintiffs' Allegations against the Ozelies

3

On May 11, 2006, plaintiffs Kristine Schroeder and George Schroeder made the following allegations to Deputy Kane at the Vilas County Sheriff's Department:

- In April 2004, Gina and Robert Ozelie started a business called "Design Trucks," which involved the sale and installation of truck accessories such as snow plows and grill guards; during the summer of 2005, plaintiffs and the Ozelies agreed to form a partnership; under the agreement, plaintiffs would receive 40% of the profits and Kristine would serve as treasurer;

- Plaintiffs noticed several financial "discrepancies" after forming the partnership, including checks that had been made payable to the partnership but had been deposited into Robert's personal account, deposits to the partnership that had been diverted to another account belonging to the Ozelies and requests by Robert that customers make out checks to him personally;

- On May 10, 2006, plaintiffs had discovered a bank statement from US Bank for an account opened by Robert doing business as Guardian Grill Guard, which was a brand of bumper guards that Design Trucks sold to its customers; plaintiffs noticed that the deposits to that account were consistent with the sales that Design Trucks made of those bumper guards (plaintiffs provided deputy Kane with a copy of this bank statement); and

4

- Plaintiffs believed that Robert was diverting funds from the partnership into his own account.

Kane relayed plaintiffs' account to Lieutenant Gardner, who told Kane to forward the complaint to defendant Frank Tomlanovich, a detective sergeant with the sheriff's department.  After reviewing the materials from Kane, defendant concluded the following in a report:

At this point I am unable to determine if there has been a crime committed.

* * * *

Although Mr. Schroeder's statement certainly suggests possible fraudulent activity on Robert Ozelie's part, more information & documentation [are needed] to support the allegation.  Even if that is available, this may still be a civil case.

When defendant contacted plaintiff Kristine Schroeder to discuss plaintiffs' allegations, he told her that the lack of supporting documentation would make it difficult to put together a criminal case.  When defendant discussed the case with the district attorney, the district attorney agreed with defendant that the information would not support a criminal charge and recommended that plaintiffs file a civil suit.  In addition, the district attorney said he would reconsider criminal charges if plaintiffs provided more evidence. (Plaintiffs proposed many more facts about Robert and Gina Ozelie, but these are irrelevant because plaintiffs proposed no facts that defendant was aware of any of this additional information.  "The only facts relevant to determining whether probable cause existed are

5

those known to the police when they apply for a warrant." <u>Beauchamp v. City of Noblesville, Indiana</u>, 320 F.3d 733, 745 (7th Cir. 2003). )

### B.  <u>The Ozelies' Allegations against Plaintiffs</u>

About ten months later, beginning on February 10, 2007, Robert and Gina Ozelie reported the following information to defendant:

- After plaintiffs and the Ozelies formed a partnership, Kristine took over bookkeeping duties in September 2005, which included maintaining the financial records and issuing checks; the Ozelies relied on printed reports provided by Kristine;

- After reviewing the first six months of these reports, Robert told Kristine that profits appeared to be significantly larger than before the partnership was formed; Kristine insisted that the numbers were correct;

- In March 2006 Robert began receiving more frequent telephone calls from vendors complaining of past due payments; when Robert confronted Kristine about the complaints, she told Robert that the bill had been paid, that it would be paid soon or just answered, "I don't know"; when Robert asked Kristine to provide him an electronic copy of the financial files she maintained on QuickBooks, she declined to do so on the advice of her lawyer and two

6

accountants;

- Robert decided that the company could not continuing operating the business this way and the business "closed its doors" in late June 2006; plaintiffs left, taking the computer that contained the company's financial records.

(Plaintiffs dispute many of these facts, but they do not deny that the Ozelies gave this information to defendant.)

Defendant included each of these allegations in a search warrant affidavit he submitted to a circuit court judge on March 5, 2007. In addition, defendant included the following information in his affidavit:

- The Ozelies provided defendant "bank records, vendor statements, QuickBooks reports and other records that tend to support their allegations of theft against Kristine Schroeder"; (none of these documents were attached to the affidavit and defendant has not produced them in discovery in this case);

- Defendant has "training and experience in the investigation of white collar crimes" and has learned that persons involved in computer-related crimes often maintain records showing their illegal activities.

C.  Execution of the Search Warrant

7

The circuit court judge authorized a search of plaintiffs' home in the following terms:

Now, therefore, in the name of the State of Wisconsin, you are commanded to search the above stated residence for:

> written and printed material containing financial records to include typed or handwritten notes, ledgers, bank statements, checks, check stubs, credit card records and statements, loan documents, vendor statements and invoices, and sales receipts, and any records relating to other interest bearing or non-interest-bearing accounts, and, for all computers and related peripheral devices, and any data storage devices, to include, but not limited to, compact discs, floppy discs, thumb drives, zip discs and magnetic tape.

The search warrant commanded the executing officers to

seize and search the same for any programs, software, files and documents which contain financial records relating to Design Trucks, Inc., and the personal financial records of George Schroeder and Kristine Schroeder, and to bring the same, and the person(s) in whose possession the same is found, before the court to be dealt with according to law, and to return this warrant to the Court within forty-eight (48) hours of execution thereof.

Defendant and three other officers conducted the search of plaintiffs' home.  The list

of items seized from plaintiffs' home reads as follows:

- 1 Dell Dimension 4700 computer tower, serial number CN0X6252708214BA

- 1 Creative 32Xmx computer tower, serial number IZOIDCTXE339

- Miscellaneous cancelled checks, carbon copies of checks, deposit slips and transaction receipts

- 1 Sony Laptop computer, serial number 283068303415278

- 1 Dell Laptop computer, serial number CN09U8061298137C

8

- 1 Inteva computer tower, serial number 7001457718

- Miscellaneous personal financial records and documents

- Miscellaneous business financial records and documents

- 1 Quantum computer hard drive, serial number 874935034191 Among the items seized were several credit cards.

- 1 BP Credit Card

- 1 First Equity VISA Credit Card

- 1 US Social Security Statement of George Schroeder

- 1 American Express Credit Card

- Miscellaneous business cards

- Miscellaneous blank checks

- Miscellaneous 3.5" floppy discs

- Miscellaneous writable compact discs

- 1 Dell Dimension 9150 computer tower, serial number 6ZR9691, with miscellaneous peripherals, cables, power supply, mouse keyboard, monitor and speakers

- 1 Hewlett Packard psc2 120 printer, serial number MY260C620XC864A

None of these items have been returned to plaintiffs.  The records from the sheriff's department do not reflect that any analysis has been conducted on the computers taken from

9

plaintiffs' home.

OPINION

Plaintiffs' primary claim is that defendant's search of their home violated their Fourth Amendment rights because the warrant authorizing the search was invalid. Plaintiffs do not argue that, on its face, the affidavit for the search warrant was insufficient to support a finding of probable cause, so I do not consider that issue. Rather, plaintiffs' argument is that defendant violated their rights by intentionally or recklessly omitting information that would have defeated probable cause if it had been included in the search warrant affidavit. Neiman v. Keane, 232 F.3d 577, 580 (7th Cir. 2000) (officer seeking warrant violates Fourth Amendment when he "does not inform the judicial officer of facts that would negate probable cause or when the officer recklessly disregards the truth in his representations to the judicial officer"). Specifically, plaintiffs contend that the circuit court judge would not have found probable cause for the search if defendant had included information about the previous allegations of embezzlement that plaintiffs had made against the Ozelies. If such information had been included, plaintiffs say, the conflict between plaintiffs' and the Ozelies' allegations would have led the reviewing judge to believe that defendant needed to corroborate Ozelies' allegations before obtaining a warrant in order to allay suspicions that the Ozelies had fabricated their story. Thus, the question is whether the Ozelies' potential

10

motive to lie undermined their credibility so greatly that defendant needed evidence beyond their statements to establish probable cause.

Defendant says that plaintiffs' allegations about the Ozelies were "irrelevant" because they "rest[ed] on a completely different set of facts." Dft.'s Reply Br. at 7, dkt. #32, but this view of the facts is not tenable. Although the allegations plaintiffs and the Ozelies made were not precisely the same, both sides were accusing each other of causing the demise of the partnership through embezzlement. Both accounts could not be entirely true. Defendant never explains why perfectly opposing stories would be necessary to raise suspicion about the Ozelies' version of events.

This does not necessarily mean that defendant violated plaintiffs' Fourth Amendment rights by failing to include the information in the search warrant affidavit. On one hand, "the police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth." Beauchamp, 320 F.3d at 743. On the other hand, "the officer has a further duty to investigate" when "[t]he complaint of a single witness or putative victim . . . would lead a reasonable officer to be suspicious." Id.

A problem for plaintiffs is that the court of appeals has given little guidance in determining when a complaining witness's account is so suspicious that additional investigation is required. Rather, it appears that in cases in which the court considered whether an officer erred in relying on a witness, the court has concluded that the account

11

was sufficiently credible.  E.g., United States v. Hicks, 531 F.3d 555, 560 (7th Cir. 2008); Beauchamp, 320 F.3d at 744-45; Woods v. City of Chicago, 234 F.3d 979, 996 (7th Cir. 2000); Neiman, 232 F.3d at 581; Guzell v. Hiller, 223 F.3d 518, 520 (7th Cir. 2000); Spiegel v. Cortese, 196 F.3d 717, 724 (7th Cir.1999); Kelley v. Myler, 149 F.3d 641, 647 (7th Cir. 1998); Gerald M. v. Conneely, 858 F.2d 378, 381 (7th Cir. 1988); Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 439 (7th Cir. 1986); Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 200 -01 (7th Cir. 1985); McKinney v. George, 726 F.2d 1183, 1187 (7th Cir.1984).  Plaintiffs do not cite any cases within this circuit in which the court of appeals concluded that an officer was liable under the Fourth Amendment and § 1983 for failing to investigate an eyewitness's account.

Unlike this case, in most of the cases cited above the parties did not provide any reason to believe that the witness was lying.  A notable exception is Spiegel, 196 F.3d 717, a case that neither side cited involving an arrest for assault.  In that case the court found that no investigation was required even though the officer knew that "a longstanding dispute" existed between the complaining witness and the plaintiff and that the complaining witness "had filed numerous charges" against the plaintiff in the past.  Id. at 724.  The court concluded: "While the lengthy and ongoing dispute culminating in the altercation and the other charges Cherny [the complaining witness] had filed might tend to establish Cherny's bias, these facts do not render Cherny's report incredible as a matter of law."  Id.

Plaintiffs' best case in this circuit may be Hebron v. Touhy, 18 F.3d 421 (7th Cir. 1994), again, a case that neither side cited.  In that case, the court stated in dicta that "the police needed to investigate" allegations brought against a landlord by tenants who were about to be evicted.  Id. at 422-23.  (The statement is dicta because the police *did* investigate and corroborate the tenants' allegations.  Id. at 423.)  The court stated that the officers "knew that the tenants were being evicted, and the significant chance that they bore a grudge against their landlords would have made it unreasonable—and therefore unconstitutional—to arrest the landlords on the tenants' mere say-so."  Id.

Hebron and Spiegel appear to point in different directions:  Spiegel seems to suggest a witness's questionable motive is not enough to defeat probable cause while Hebron suggests the opposite.  One way to distinguish the statement in Hebron from the holding in Spiegel is that other evidence of the crime existed in Spiegel; the officer could see that the alleged victim had been bruised.  This is consistent with the view that an officer may compensate for a witness's questionable reliability through other factors, such as a high level of detail or preexisting corroborating facts.  United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002) (setting forth several nonexclusive factors that courts may consider in determining whether informant's statement provides probable cause).

Defendant argues that he *had* corroboration before he applied for the warrant in the form of "bank records, vendor statements, QuickBooks reports and other records that tend

13

to support [the Ozelies'] allegations of theft."   The problem with this argument is that defendant has adduced no evidence that such records exist.   They did not accompany the search warrant affidavit and defendant did not produce them during discovery in this case. Under Fed. R. Civ. 56(e)(1),"[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."   At the very least, defendant's failure to produce the documents puts their existence into dispute.

Because I must view the facts in the light most favorable to plaintiffs, Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 489 (7th Cir. 2007),  I must assume for the purpose of summary judgment that defendant relied solely on the statement provided by the Ozelies when he applied for the warrant.  This creates a problem for defendant because it cannot be denied that the Ozelies had a motive to point the finger at plaintiffs.  Cf. Bruton v. United States, 391 U.S. 123, 136 (1968) (testimony of accomplices is "inevitably suspect . . . given the recognized motivation to shift blame onto others").  Even if the Ozelies were not aware that plaintiffs had previously accused them of stealing from the company (the record is silent on this question), the two very different accounts provided by plaintiffs and the Ozelies called for some verification of the Ozelies' story.  Accordingly, I conclude that a reasonable jury could find that defendant intentionally or recklessly omitted facts from the search warrant affidavit that would have defeated probable cause had he included them.

This does not get plaintiffs across the finish line because I cannot conclude that the

14

law clearly establishes that defendant's actions were unconstitutional, which is what
plaintiffs must show to overcome the qualified immunity defense that defendant has raised.
Smith v. City of Chicago, 242 F.3d 737, 742 (7th Cir. 2001).  Plaintiffs devote a solitary
paragraph in their brief to the issue of qualified immunity, saying only that "all of the
authorities cited for the propositions of law that are essential for liability in this case predate
the wrongful acts at issue."  Dkt. #26, at 17.  However, as noted above, plaintiffs cite no
cases from the Seventh Circuit in which the court held that an officer violated the Fourth
Amendment under circumstances similar to this case.  The only case with remotely similar
facts that plaintiffs cite is United States v. Reivich, 610 F. Supp. 538 (W.D. Mo. 1985), in
which the court held that probable cause was not shown by the statement of informants who
were implicated in the same criminal activity as the person they were accusing.  There are
a number of differences between Reivich and this case, but even if I assume that it is on
point, a district court opinion cannot clearly establish the law, Anderson v. Romero, 72 F.3d
518, 525 (7th Cir. 1995), particularly when the decision is from another circuit and it was
overturned on the very issue relevant to this case, United States v. Reivich, 793 F.2d 957
(8th Cir. 1986), a fact that plaintiffs failed to acknowledge.

It is true that a dearth of cases with similar facts does not doom a plaintiff's ability
to overcome a qualified immunity defense.  Hope v. Pelzer, 536 U.S. 730 (2002).  When
a case presents "novel factual circumstances," the plaintiff may prevail if she can show that

"a general constitutional rule already identified . . . appl[ies] with obvious clarity to the specific conduct in question." <u>Michael C. v. Gresbach</u>, 526 F.3d 1008, 1017 (7th Cir. 2008).  Thus, the question in this case is whether it should have been "obvious" to defendant that the law required him to investigate further before searching plaintiffs' home. Unfortunately, plaintiffs do not even attempt to show that their case meets this standard. It would be difficult to argue that they could, particularly in light of <u>Spiegel</u>, which could be read as suggesting that  in almost any circumstance officers are entitled to accept a witness's statement at face value.  <u>Spiegel</u>, 196 F.3d at 725 ("The credibility of a putative victim or witness is a question, not for police officers in the discharge of their considerable duties, but for the jury in a criminal trial."); <u>see also</u> <u>Beauchamp</u>, 320 F.3d at 745  ("[T]he responsibility of sorting out conflicting testimony and assessing the credibility of putative victims and witnesses lies with the courts.")  Although <u>Hebron</u> leans the other way, this shows only that the state of the law is unclear.  Even in <u>Hebron</u>, the court suggested that an officer's obligation to investigate questions of motive is limited.  <u>Id.</u> at 423 (police officers "have a hard time evaluating competing claims about motive; they are entitled to act on the basis of observable events and let courts resolve conflicts about mental states")  Defendant is entitled to qualified immunity.

I come to the same conclusion regarding plaintiffs' claim that defendant exceeded the scope of the warrant.  Plaintiffs cite no authority and develop no argument showing that

16

defendant's execution and interpretation of the warrant were so unreasonable as to show that he was "plainly incompetent" in determining the scope of his authority.  Malley v. Briggs, 475 U.S. 335, 343 (1986).

This leaves plaintiffs' state law claim for tortious interference with a contract.  (When all the federal claims in a case have been dismissed, a court has discretion to dismiss any remaining supplemental state law claims under 28 U.S.C. § 1367(c)(3).  That rule does not apply in this case because defendant did not move for summary judgment on plaintiff's claim under the Fourth Amendment that defendant has failed to return seized items within a reasonable time.)  Neither party develops the facts or legal basis for the state law claim.  In their complaint, plaintiffs allege that defendant interfered with their business by seizing many of their business records.

The elements for a claim of tortious interference with a contract are: (1) the plaintiff had a current or prospective contractual relationship with a third party; (2) the defendant interfered with that contractual relationship; (3) the interference was intentional; (4) a causal connection exists between the defendant's interference and the plaintiff's damages; and (5) the defendant was not justified or privileged to interfere.  Wolnak v. Cardiovascular & Thoracic Surgeons, S.C., 2005 WI App 217, ¶ 14, 287 Wis. 2d 560, 706 N.W.2d 667.  Although plaintiffs might have difficulty proving a number of these elements, defendant's only argument in favor of dismissal of this claim is that "the execution of the warrant cannot

17

be argued to be justified." Dkt. #19, at 17.  Presumably, defendant means to argue that the execution of the warrant *was* justified.  Although I have concluded that defendant is entitled to qualified immunity, I also have concluded that defendant may have violated plaintiffs' Fourth Amendment rights, which means that I may not grant summary judgment to defendant on the state law claim on the ground that the search was proper.  Because defendant identifies no other ground for summary judgment on this claim, the must proceed to trial.  Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 736 (7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.")

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Vilas County and Frank Tomlanovich is GRANTED with respect to plaintiffs Kristine Schroeder's and George Schroeder's claims that defendant Tomlanovich searched their home in violation of the Fourth Amendment and exceeded the scope of the search warrant. The motion is DENIED with respect to plaintiffs' claim for tortious interference with a contract.  The case will proceed to trial on the state law claim and plaintiffs' claim under the Fourth Amendment that defendant Tomlanovich has failed to return plaintiffs' seized property

18

within a reasonable time.

Entered this 2nd day of February, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

19